IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CLINTON KEY,                    )
                                )
        Plaintiff,              )
                                )
v.                              )           No. 3:14-cv-02002
                                )
METRO POLICE DEPARTMENT OF      )           Chief Judge Sharp
DAVIDSON COUNTY *et al.*,       )
                                )
        Defendant.              )

## MEMORANDUM OPINION

Plaintiff Clinton Key is a pretrial detainee in the custody of the Davidson County Sheriff's Office in Nashville, Tennessee. He has filed a civil rights complaint under 42 U.S.C. § 1983 against the following defendants: the Metropolitan Government of Nashville and Davidson County ("Metro"), the Metro Police Department; Detective Christopher R. Cote and Officer Carlos M. Urrutia, both with the Metro Police Department; defense attorneys Mark Kovach and Jennifer Hall; the State of Tennessee; and the General Sessions Court for Davidson County. (ECF No. 1.) The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"). For the reasons explained herein, the false arrest claims under § 1983 and state law against defendant Christopher Cote will be permitted to proceed. However, the § 1983 claims against defendants the Metro Police Department, Officer Carlos Urrutia, Metropolitan Nashville and Davidson County, and attorneys Kovach and Hall will be dismissed with prejudice, and the remaining claims will be dismissed without prejudice.

**I.      Standard of Review**

Under the PLRA, the Court is required to dismiss any *in forma pauperis* or prisoner action if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A. The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under [the PLRA] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial

review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Nonetheless, in conducting the initial review, the Court must read the plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept the plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

## II.     Factual Allegations

From the allegations in the complaint and the attachments thereto, it appears that the plaintiff was arrested pursuant to a warrant issued by the General Sessions Court for Metro on September 4, 2014, on a charge of aggravated assault (for displaying a gun during an altercation) that allegedly occurred on the same date. The arrest warrant states that the plaintiff admitted displaying the gun in order to scare off the "victim." (ECF No. 1, at 7.) The warrant was sworn out by Metro Police Officer Carlos Urrutia. Defense attorney Mark Kovach was apparently appointed to represent the plaintiff on that charge. The plaintiff alleges that he has not seen his attorney or been to court on these charges even though he has been in custody since September 4.

A second warrant for the plaintiff's arrest was issued by the General Sessions Court on September 10, 2014 for an aggravated assault that allegedly occurred on September 2, 2014. According to the arrest warrant, the plaintiff stabbed Orlander Tate; Tate stabbed the defendant in the back in self-defense; and "[a] video of the incident shows the defendant [Key] attacking the victim [Tate] first." (ECF No. 1, at 8.) Metro Police Detective Christopher Cote swore out the warrant, and defense attorney Jennifer Hall was appointed to represent the plaintiff on this charge. The plaintiff states that he has "seen [Hall] once or twice but [has] not been in court room yet." (*Id.*)

Regarding the factual basis for the issuance of the second arrest warrant, the plaintiff alleges that he was involved in an altercation with Orlander Tate in which the plaintiff was stabbed in the back and across the neck while Tate was cut on the upper arm. Someone called 911 and both the plaintiff and Tate were taken to the hospital. The plaintiff got a tetanus shot but refused stitches. According to the plaintiff, Cote, the investigating officer, originally believed that the plaintiff was the victim rather than the

perpetrator of the alleged assault. Cote gave the plaintiff his card and instructed him to call the next day to find out when he should appear in court. The plaintiff believed at that time that Tate was "headed to jail." He saw Tate the next morning, however, so he began calling Cote to find out why. He was never able to reach Cote by telephone. Instead, Cote appeared at the plaintiff's residence and began questioning him about an incident in which another man pulled a butcher knife on the plaintiff. The plaintiff's allegations are unclear, but it appears this event may have involved an entirely different altercation from that with Tate. In any event, the plaintiff explained in detail this altercation, which involved both parties' pulling knives, but no injuries. Two days later, according to the plaintiff, "Det. Cote and Officer Carlos M. Urrutia officers of the law fabricated and rearranged said incident which happen on the 2nd of Sept. Sept. 2 Report is not present." (ECF No. 1, at 10.)

The plaintiff states that Cote and Urrutia falsified documents in order to incarcerate the plaintiff. He asks: "If the incident happen on September 2, 2014 where is the paperwork for said date and how did the victim on that said date Clinton Key become the defendant on September 10th of 2014 at 9:35:56 8 days later while locked up on an aggravated assault with a deadly weapon." (ECF No. 1, at 11.) He generally alleges "false accusation" on the part of the "Metro Police Dept." (ECF No. 1, at 10.)

The plaintiff alleges that his appointed attorneys, Kovach and Hall, are incompetent and have violated his Sixth Amendment right to the effective assistance of counsel.

He seeks to sue the state of Tennessee, Metro General Sessions Court, and Metro for unspecified violations of his rights under the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution.

The plaintiff also alleges that he is being harassed by the "Sheriff Department" at the CJC and that he is not receiving proper medical care. He does not, however, name as defendants any of the individuals allegedly responsible for the harassment and denial of medical care. The plaintiff also references a § 1983 complaint he filed in this Court in 2004 or 2005. He states that his complaint had merit but he was unable to pursue it and is unaware of the outcome of the case because he was in jail.

The plaintiff seeks compensatory and punitive damages. He does not seek equitable relief.

### III.     Discussion

The plaintiff seeks to bring suit under 42 U.S.C. § 1983 to vindicate alleged violations of his federal constitutional rights. Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

### A.     The Claims Against Metro Police Officers Christopher Cote and Carlos Urrutia

Regarding the plaintiff's claims against individual Metro police officers Cote and Urrutia, the Court construes the complaint to assert claims under 42 U.S.C. § 1983 for arrest without probable cause, and supplemental state-law claims of false arrest. Police officers are generally considered to act under color of state law, and the Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. Amend. IV; *Untied States v. Torres–Ramos*, 536 F.3d 542, 554 (6th Cir. 2008). The question, for purposes of this Court's initial review under the PLRA, is whether the plaintiff alleges sufficient facts to state a colorable claim against these defendants under § 1983 for violation of his Fourth Amendment rights.

"A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005). When a plaintiff is arrested pursuant to a warrant, the plaintiff must show "that in order to procure the warrant, [the officer] knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that created a falsehood and such statements or omissions were material, or necessary, to the finding of probable cause." *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (citations omitted)).

Specifically with respect to the claims against defendant Urrutia, the plaintiff alleges generally that Urrutia, along with Cote, "fabricated and rearranged" the facts pertaining to the September 2 incident. The arrest warrant attached to the complaint, however, shows that only Cote was the prosecuting officer on

the September 2 charge, not Urrutia, and the plaintiff does not allege that he ever met or spoke with Urrutia, nor does he allege actual facts suggesting that Urrutia was involved in the plaintiff's arrest for the September 2 incident. In addition, although the plaintiff complains that he has not been to court or met with his attorney on the September 4 incident, he does not affirmatively dispute the facts as set forth in the arrest warrant to support a finding of probable cause for the September 4 arrest. In other words, the actual allegations of fact in the complaint do not support any claims of arrest without probable cause or state-law false arrest against defendant Urrutia. The claims against Urrutia will therefore be dismissed for failure to state a claim for which relief may be granted. *See also Rizzo v. Goode*, 423 U.S. 362, 371 (1976) (holding that, to establish the liability of any individual defendant, the plaintiff must show that that particular defendant was personally involved in the activities giving rise to the plaintiff's claims); *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (noting that "[p]ersons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior").

As for the claims against defendant Cote, although the complaint is hardly a model of clarity, the plaintiff nonetheless affirmatively alleges that he spoke with Cote and explained his version of events, and that Cote thereafter knowingly made false statements in the arrest warrant and knowingly arrested the plaintiff without probable cause. The Court finds, for purposes of the initial review, that the plaintiff has stated colorable claims under § 1983 and state law against defendant Cote.

**B.      The Claims Against Metro and the Metro Police Department**

The Police Department is an agency or unit of the Metropolitan Government of Nashville and Davidson County ("Metro") and not a suable entity itself. *See Mathes v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:10-cv-0496, 2010 WL 3341889, at *2 (M.D. Tenn. Aug. 25, 2010) ("[F]ederal district courts in Tennessee have frequently and uniformly held that police departments and sheriff's departments are not proper parties to a § 1983 suit." (collecting cases)). The claims against the police department are subject to dismissal on that basis alone.

Regardless, because the plaintiff has also sued Metro, which is a suable entity under § 1983, dismissing the police department *per se* has no practical effect on the case. *Cf. Mathes*, 2010 WL 3341889, at *3. However, while Metro is a suable entity, it is responsible under § 1983 only for its "*own* illegal acts. [It is] not vicariously liable under § 1983 for [its] employees' actions." *Connick v. Thompson*,

563 U.S. ----, 131 S. Ct. 1350, 1359 (2011) (internal citations and quotation marks omitted). A municipality may be liable under § 1983 "only if the challenged conduct occurs pursuant to a municipality's 'official policy,' such that the municipality's promulgation or adoption of the policy can be said to have 'cause[d]' one of its employees to violate the plaintiff's constitutional rights." *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)).

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 131 S. Ct. at 1359. Thus, to state a municipal liability claim, a plaintiff must adequately allege "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). In this case, although the plaintiff alleges facts supporting his claim against defendant Cote, he does not allege that Cote acted pursuant to policy or custom adopted by Metro or the Metro Police Department as a division of Metro. He does not allege the existence of an official policy or suggest that his alleged injuries resulted from any such policy. The complaint therefore fails to state a claim against Metro.

### C.   The Claims Against the State of Tennessee and the State Court

The Court lacks subject-matter jurisdiction over the claims against the state of Tennessee and the General Sessions Court, as an agency or division of the state,[1] because the state and its agencies are not suable entities under § 1983 and in any event are immune from suit pursuant to the Eleventh Amendment. *Quern v. Jordan*, 440 U.S. 332, 340–45 (1979). The only exceptions to a state's immunity are (1) if the state has consented to suit or (2) if Congress has properly abrogated a state's immunity. *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). Neither of these exceptions applies to § 1983 suits against the state of Tennessee. *See Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (noting that Tennessee has not waived immunity to suits under § 1983); *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (reaffirming that Congress did not abrogate states' immunity when it passed § 1983). The claims

---

[1] If the general sessions court is a division of Metro Nashville rather than the state, the claims against it are subject to dismissal on the same grounds that the claims against the Metro Police Department must be dismissed, as discussed above.

against the state and the state court will be dismissed for lack of subject-matter jurisdiction, and the dismissal will be without prejudice to the plaintiff's ability to bring the claims in a state forum in accordance with state law, if he so chooses. See *Underfer v. University of Toledo*, 36 F. App'x 831, 834 (6th Cir. 2002) (recognizing that § 1983 claims dismissed on Eleventh Amendment grounds should be dismissed for lack of subject-matter jurisdiction); *Ernst v. Rising*, 427 F.3d 351, 367 (6th Cir. 2005) ("[D]ismissals for lack of jurisdiction should generally be made without prejudice." (citations omitted)).

### D. The Claims Against Attorneys Mark Kovach and Jennifer Hall

Finally, regarding the plaintiff's claims against defense attorneys Mark Kovach and Jennifer Hall, the Court construes the complaint to allege that these defendants have been negligent or incompetent in their representation of the plaintiff. Insofar as the plaintiff seeks to assert colorable claims under 42 U.S.C. § 1983 against these defendants for violation of his Sixth Amendment right to the effective assistance of counsel, he fails to do so. Whether these individuals are employed by the state as public defenders or are private attorneys appointed to represent indigent defendants, they are not persons "acting under color of state law" who may be subject to liability under § 1983. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."). The plaintiff alleges liability on the part of Kovach and Hall only in connection with these defendants' activities as the plaintiff's appointed criminal defense counsel, so the exceptions the Supreme Court and the Sixth Circuit have recognized under which a public defender may be sued under § 1983 do not apply. *Cf. Powers v. Hamilton Cnty. Public Defender Comm'n*, 501 F.3d 592, 612 (6th Cir. 2007) (holding that a public defender and public defender's office were subject to liability under § 1983 where the allegations supported a finding that the challenged action was administrative in nature and also was alleged to be an unconstitutional policy or custom), *cert. denied*, 555 U.S. 813 (2008). The § 1983 claims against Kovach and Hall will therefore be dismissed for failure to state a claim for which relief may be granted.

Insofar as the plaintiff alleges that Kovach and Hall are incompetent and engaged in misrepresentation and "trickery by law" (ECF No. 1, at 6), the complaint may also reasonably be construed as asserting state-law claims of legal malpractice. Pursuant to 28 U.S.C. § 1367(a), a federal court may exercise supplemental jurisdiction over state-law claims if those claims "form part of the same

case or controversy" as the claims that provided the court with original jurisdiction. *Wis. Dep't of Corrs. v. Schacht*, 524 U.S. 381, 387 (1998). A state-law claim forms part of the same controversy if it and the federal claim "derive from a common nucleus of operative fact," thus in effect forming a single action. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). A common nucleus of operative fact will generally exist if, "considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding." *Gibbs*, 383 U.S. at 725; *Transcontinental Leasing, Inc. v. Mich. Nat'l Bank*, 738 F.2d 163, 165–66 (6th Cir. 1984). A plaintiff's state and federal law claims need not be identical—a loose factual connection between such claims is generally sufficient. *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir.1995) (citing 13B Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure § 3567.1, at 117 (2d ed. 1984)). A connection that is merely tangential, however, will not suffice.

Here, the plaintiff brings two distinctly separate sets of claims in one proceeding: false arrest claims against the Metro Police officers and various governmental entities under § 1983 and state law; and legal malpractice/Sixth Amendment claims against the two attorney defendants arising from the attorneys' alleged failures that occurred well after the plaintiff was arrested and jailed. Although tangentially related, these claims would not normally be expected to be tried in one proceeding. In other words, the state-law legal malpractice claims are not "supplemental" to the false-arrest claims; they are "supplemental" only to the Sixth Amendment claims against the attorneys. Because the Court will dismiss the Sixth Amendment claims that provided the basis for exercising jurisdiction over the attorney defendants, the Court will, under 28 U.S.C. § 1367(c)(3), decline to exercise supplemental jurisdiction over the state-law claims against the same defendants. In addition, based on the fact that the attorney-malpractice claims have no factual relationship with the false-arrest claims against the sole remaining defendant, the Court finds that "extraordinary circumstances" justify declining to exercise supplemental jurisdiction over the malpractice claims, pursuant to § 1367(c)(4).

In sum, the Court will dismiss with prejudice the § 1983 claims against defendants Kovach and Hall, and will dismiss without prejudice the legal-malpractice claims against the attorneys.

IV.     **CONCLUSION**

For the reasons explained herein, the false arrest claims under § 1983 and state law against defendant Christopher Cote will be permitted to proceed. However, the § 1983 claims against defendants the Metro Police Department, Officer Carlos Urrutia, Metropolitan Nashville and Davidson County, and attorneys Kovach and Hall will be dismissed with prejudice, and the remaining claims will be dismissed without prejudice.

An appropriate order is filed herewith.


KEVIN H. SHARP
Chief Judge
United States District Court