```
UNITED STATES DISTRICT COURT
  MIDDLE DISTRICT OF TENNESSEE
       NASHVILLE DIVISION

CLINTON KEY,                    )
                                )
     Plaintiff                  )
                                )    No. 3:14-2002
v.                              )    Chief Judge Sharp/Brown
                                )
CHRISTOPHER R. COTE,            )
                                )
     Defendant                  )
```

**TO: THE HONORABLE KEVIN H. SHARP**

## REPORT AND RECOMMENDATION

For the reasons stated below, the Magistrate Judge recommends that the Defendant Cote's motion to dismiss (Docket Entry 19) be granted and this case be dismissed with prejudice. The Magistrate Judge further recommends that any appeal from a dismissal of this case not be certified as taken in good faith.

### BACKGROUND

The Plaintiff filed a rather lengthy complaint (Docket Entry 1) against Defendant Cote of the Metropolitan Police Department of Davidson County and Carlos Urrutia (Urrutia) (Docket Entry 1).

Chief Judge Sharp's memorandum opinion, which constituted the initial review of this case pursuant to 28 U.S.C. § 1915(e)2 summarized the factual allegations in this matter.

The Plaintiff's allegations are that he was arrested pursuant to a warrant issued by the Davidson County General Sessions Court of Nashville on September 4, 2014, on a charge of aggravated assault for displaying a gun during an altercation that occurred on that same date. Subsequently, the Plaintiff was

arrested on a second warrant issued by a general sessions judge on September 10, 2014, for an aggravated assault that allegedly occurred on September 2, 2014, where, according to the warrant, the Plaintiff stabbed Orlander Tate (Tate) and that Tate stabbed the Defendant in the back in self defense. A video of the incident showed that the Plaintiff did attack the victim Tate first.

The Plaintiff alleges that the Defendant Metropolitan Police Detective Cote (Detective Cote) who swore out the warrant for the second arrest, lacked probable cause.

The Plaintiff alleged that Detective Cote originally believed that the Plaintiff was the victim rather than the perpetrator and that Detective Cote would arrest Tate. He alleges that when he saw Tate he tried to call Detective Cote to find out why Tate had not been arrested. He stated that he was not able to reach Detective Cote by telephone, but instead Detective Cote appeared at his residence and began questioning him about an incident in which another man pulled a butcher knife on the Plaintiff. The complaint is not clear about this incident. From a view of later materials it appears that the incident with the butcher knife was actually an incident that occurred on September 2, 2014, with Jones and led to the Plaintiff's arrest on September 4, 2014, when the Plaintiff was alleged to have threatened Jones with a weapon.

The Plaintiff alleged that Detective Cote and Urrutia falsified documents in order to secure his arrest. Chief Judge Sharp found that the Plaintiff had made sufficient allegations of an improper arrest against Detective Cote for the case to proceed

2

forward. However, the complaints against all other Defendants were dismissed.

Subsequently, Detective Cote was served and had an attorney enter an appearance for him (Docket Entry 18). Detective Cote promptly filed a motion to dismiss supported by a memorandum of law (Docket Entry 19 and 20). Detective Cote's motion and memorandum are based on the straightforward proposition that following the Plaintiff's complaint the Davidson County General Sessions Court conducted a preliminary hearing on the Plaintiff's aggravated assault charge on December 29, 2014, and determined that there was probable cause for his arrest. They argue that the Plaintiff is therefore barred from relitigating that issue in this case.

The Plaintiff filed a pleading entitled "Motion to Pursue With Stay" (Docket Entry 22). This motion is in fact a response to the Detective Cote's motion to dismiss. He requested in his motion that the Magistrate Judge look at the preliminary hearing facts and that the Court not rule on the matter until there is a full trial in this case.

The motion to dismiss only provided the order of General Sessions Judge Rachel Bell that, "it appears from the testimony in the case that there is probable cause to believe the defendant [Key] guilty of the offenses of which he stands charged" and ordered him bound over to the next term of the Criminal Court of Davidson County (Docket Entry 19-1).

In order to determine whether there had been a full and complete hearing on the issue of probable cause, the Magistrate

3

Judge directed the Defendant to file either a transcript or a copy of the recording of the hearing (Docket Entry 23). A recording of the hearing was filed with the Court on February 11, 2015 (Docket Entry 26).

The Plaintiff, on February 11, 2015, filed a notice of filing in which he complained that he did not have an opportunity to testify at the preliminary hearing and that the state witnesses violated Judge Bell's order that the witnesses not discuss the matter during the hearing (Docket Entry 27).

The Magistrate Judge has listened to the entire recording of the hearing in the general sessions court,[1] which is contained in two separate recording that total two hours and 24 minutes, plus an additional hearing on bond for Plaintiff. The first witness for Metro was Brian Jones (3:35:50), who testified that his first contact with Plaintiff was on September 2, 2014, when the two of them had an altercation at a market after both of them had been told to leave and Plaintiff pulled a large butcher knife on him.

Later, on September 4, 2014, Jones and Plaintiff again had contact, and at this point Plaintiff pulled out of a bag that had been stored in Plaintiff's car, what looked like an assault rifle and threatened him. It subsequently turned out that the weapon was an unloaded BB gun that closely resembled an assault rifle. Jones was extensively cross-examined by Plaintiff's attorney, Jennifer Hall (3:43:55 to 4:03:50).

---

[1]The numbers in parenthesis are the hours, minutes, and seconds, where the recording of the testimony is found.

The next witness for Metro was Tate, the individual the Plaintiff is accused of attacking with a knife (4:04:54). Tate testified that he and his girlfriend went to the M&M Market on September 2, 2014, and that a large individual hollered at her and he got into a discussion with this man and told him to leave her alone. He stated then that Plaintiff came up and hit him. He stated that Plaintiff's hitting him was unprovoked. He further testified that Plaintiff pulled a knife and chased him around the front of the store and cut him. He described the knife as a butcher knife with a 6"-plus blade. He testified that an ambulance was called and he was taken to the hospital where he received some 40 stitches. He admitted that after the Plaintiff hit him, broke his glasses and pulled a knife he pulled a small knife from his pocket to defend himself (4:08:45).

Plaintiff's counsel extensively cross-examined Tate about his version of the facts (4:09:54 to 4:24:37).

Detective Cote, the Defendant in this case, testified at the preliminary hearing (4:26:35) that he first became involved in this matter on September 2, 2014, when he was called to the scene of a fight at the M&M Market. When he arrived on the scene both Plaintiff and Tate were in ambulances (4:27:37). Plaintiff did not want to go to the hospital, while Tate did. Plaintiff finally did go to the hospital. Although Detective Cote went to the hospital, he did not question either man, but left word that they should contact him or he would try to contact them later.

On September 4th, he went to locate them since neither had particularly stable residences. He talked to Tate by telephone. He

5

talked to Plaintiff at Serenity House, which is a short distance from the M&M Market, and the halfway house where Jones had lived. While talking to Plaintiff he learned of the incident with Jones and Plaintiff involving the gun (4:28:55). Detective Cote testified that he went there originally to sort out who was the aggressor when Plaintiff and Tate had been cut on September 2nd. He testified that he interviewed Tate and his girlfriend and took a statement from Jones where Jones related that Plaintiff had pulled a knife on him earlier on September 2nd. He also reviewed the video surveillance from the store which showed outside views. He stated the video was of poor quality (4:30:25). He stated that on the video he could see Tate and his girlfriend coming up and then what appeared to be Plaintiff and Tate involved in an altercation, which moved off camera and subsequently showed Tate running back into view, and then going off camera and finally coming back into view again.

Detective Cote testified that the store employee told him that Plaintiff was not a regular employee there as claimed, but did hang out there doing odd jobs and being paid with cigarettes. He stated from all of the material they developed, they determined that Plaintiff was the aggressor.

Defense counsel cross-examined Detective Cote for some time about all aspects of his direct testimony (4:34:00 to 5:00:35).

Beginning at 4:44:42, Detective Cote was cross-examined extensively about the fact that he wrote that Tate had inflicted a wound on Plaintiff's back in self-defense. He explained that in

6

some detail how he arrived to this conclusion by interviewing various witnesses at the scene. He noted that Plaintiff was extremely intoxicated when he interviewed him on September 2. Detective Cote summarized the evidence that led him to conclude that Plaintiff was the aggressor despite the wound to Plaintiff's back (4:57:54).

The final witness for Metro was Officer Urrutia (5:01:34). Officer Urrutia testified that he helped arrest the Plaintiff on September 4th. At that time the Plaintiff admitted that he had a BB gun and made several comments that the officer thought were somewhat irrational. Plaintiff said he thought the officers were stupid to arrest him for a BB gun. He stated that when they examined the BB gun, it looked like an assault rifle. It did not contain any BB's. He said that Plaintiff admitted that he had displayed the gun in an attempt to scare Jones.

After a short recess the Defendant presented his evidence. The first witness for Tate was Mr. Michaeo, a clerk at the M&M Market (5:40:50). He said that he knew Plaintiff since Plaintiff helped at the store by moving stuff and picking up the trash. He was not a regular employee, but was paid with cigarettes and other small rewards. On both the September 2nd and 4th, he said that he did not think that Plaintiff was drinking heavily. He knew Tate as a customer and thought that Tate drank quite a bit and was mean.

Michaeo testified that the store had nine inside cameras and one outside camera. In some rather confusing testimony where it was not clear from the recording who was being discussed at a

7

particular time, it appeared (5:47:00) that the first incident on September 2nd involved Jones and Plaintiff. They got into an argument in the store and were ordered out. It appears that the clerk testified that Jones pulled a knife on Plaintiff (5:48:30) that apparently ended the altercation.

The next incident involved Tate, his girlfriend, and Plaintiff. He said that the incident between Tate and Plaintiff took place outside the store (5:50:00) and he did not see how the fight started. Again, his testimony is rather confusing because of counsel's failure to clearly identify who he was pointing out in court.

It appears that Michaeo testifies that he saw an initial fight begin between Tate and Plaintiff. He came out and then went back into the store and came back out and saw them again fighting a few minutes later (5:50:20). It appears that Michaeo's testimony was that he saw Plaintiff bleeding first and then Tate bleeding. Unfortunately, because he did not use names, it is very hard to sort out from the recording who the witness is pointing to as he testifies. A black female police officer came and broke up the fight (5:51:11). He said that he did not see Plaintiff hit Tate. He said that he did know that Plaintiff had a knife. Later, on cross-examination he admitted that, although he saw Tate bleeding first, he could not be sure who was actually cut first (6:12:07).

Following his testimony, Key was asked if he had any further proof and his attorney stated that they did not (6:13:25). After hearing arguments, Judge Bell found probable cause in the matter (6:23:00).

8

**LEGAL DISCUSSION**

The Magistrate Judge has carefully reviewed the opinion of District Judge Collier in the case of *Mills v. Davis*, 2014 LEXIS 86152, 2014 WL 2893215 (E.D. Tenn. 2014), also found at Docket Entry 20-1). This case squarely addresses the issue presented by the defense. In the *Mills* case, the plaintiff was arrested by a police officer for aggravated domestic assault, based on the officer's testimony that he saw the assault through a window. At a preliminary hearing, two witnesses testified that the plaintiff "never hit or [indecipherable word] [his] [girlfriend]." Evidence was also presented that although the officer testified that he saw the assault, that the plaintiff contended that the homeowner testified the window was covered with plastic and a blanket. At the conclusion of the hearing, the presiding judge found probable cause and bound the plaintiff over to the grand jury. Judge Collier's opinion discussed in detail the Sixth Circuit law concerning the § 1983 claims against an officer for an arrest without probable cause.

Probable cause under the Fourth Amendment is just that, a reasonable belief that the person arrested committed a crime. A reasonable belief means a belief it is more likely than not that the offense was committed by the person arrested. It is an inquiry into probabilities, not certainty. *United States v. Richardson*, 40 Fed. Appx. 7, 13 (6th Cir. 2002).

Where a plaintiff is granted a probable cause hearing "a federal court must give a state court judgment the same preclusive effect as would be given that judgment under the laws of the state in which the judgment was rendered." *Nigra v. Warren School District Board of Education*, 465 U.S. 75, 81 (1984). As Judge Collier points out the court must apply Tennessee law to determine whether the state ruling is conclusive. *McKinley v. City of Mansfield*, 404 F.3d 418, 428 (6th Cir. 2005).

The Tennessee Supreme Court requires a five-part test to see if collateral estoppel applies:

(1) the issue to be precluded is identical to the issue decided in an earlier proceeding;

(2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding;

(3) that the judgment in the earlier proceeding has become final;

(4) that the party against whom collateral estoppel is asserted was a party to the earlier proceeding;

(5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.

*Mullins v. State*, 294 S.W.3d 529, 535 (Tenn. 2009).

The Sixth Circuit in *Smith v. Thornburg*, 136 F.3d 1070, 1077 (6th Cir. 1998) held that where "the state affords an opportunity for an accused to contest probable cause at a

preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in subsequent § 1983 action."

In this case the Magistrate Judge finds that all five factors required by the *Mullins* case needed to assert collateral estoppel are present. The probable cause hearing was on the issue of whether there was probable cause that the Plaintiff committed aggravated assault on Tate and Jones. That issue was raised, litigated, and decided on the merits. The decision, since the matter has been bound over to the grand jury, is final. Plaintiff was represented by an attorney who vigorously cross-examined the witnesses against him and called witnesses in his defense. There was no indication that Plaintiff was prevented from testifying had he wished to do so. Defense counsel was asked if she had further evidence and she said she did not (6:13:25).

The Plaintiff chose to litigate the issue of probable cause in state court and unfortunately for his civil rights case he lost at the preliminary hearing stage in state court. He may not now relitigate the issue of probable cause. He has had his one bite at the probable cause apple and lost.[2]

**RECOMMENDATION**

For the reasons stated above, the Magistrate Judge recommends that the claims against Detective Cote be dismissed with prejudice for failure to state a claim. The Magistrate Judge

---

[2]The fact that the Judge found probable cause despite disputed evidence just means she found probable cause. The result of a criminal trial on the charges which requires proof beyond a reasonable doubt may be far different.

11

further recommends that any appeal from the adoption of this report and recommendation be determined not to be in good faith.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has **14 days** from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have **14 days** from receipt of any objections filed in this Report in which to file any responses to said objections. Failure to file specific objections within **14 days** of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 106 S. Ct. 466, 88 L.Ed.2d 435 (1985), *Reh'g denied*, 474 U.S. 1111 (1986).

**ENTER** this 6th day of March, 2015.

/s/   Joe B. Brown
JOE B. BROWN
United States Magistrate Judge